**In The**
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-21-00275-CR**

**CHAD LATIMER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 16-23985**

## OPINION

Chad Latimer appeals the trial court's revocation of his community supervision after he pleaded "true" to multiple violations the State alleged in its Fourth Amended Motion to Revoke. In two issues, Latimer complains (1) the trial court erred by denying his motion to suppress evidence that he violated Texas Health and Safety Code section 481.133(a) absent a warrant, and (2) Texas Health and Safety Code section 481.133(a) is facially unconstitutional. We will affirm the trial court's judgment.

# I. Background

Latimer pleaded guilty to the third-degree felony offense of injury to elderly, and the trial court adjudicated him guilty, sentenced him to ten years of incarceration, and required him to pay a fine and restitution. *See* Tex. Penal Code Ann. § 22.04. The trial court suspended imposition of the sentence and placed Latimer on community supervision. The State filed multiple motions to revoke, and ultimately, the trial court held a hearing over two separate days on the State's Fourth Amended Motion to Revoke. In that Motion to Revoke, the State alleged the following violations, among others, of the terms of his community supervision:

1). The said CHAD LESLEY LATIMER failed to report to the Jefferson County Community Supervision and Corrections Department on or about December 8, 2017, in violation of Condition (4) of Defendant's Community Supervision order.

2). The said CHAD LESLEY LATIMER failed to report weekly to the Jefferson County Community Supervision and Corrections Department since July 10, 2017, in violation of Condition (4) of Defendant's Community Supervision order.

. . .

8). The said CHAD LESLEY LATIMER failed to immediately report to the Community Supervision officer his change of address in violation of Condition (9) of Defendant's Community Supervision order.

9). The said CHAD LESLEY LATIMER was at a location other than his residence [ ] between 10pm and 6am on or about the 27th day of April, 2019, in violation of Condition (19) of Defendant's Community Supervision order.

. . .

2

11). The said CHAD LESLEY LATIMER has failed to provide verification of performing the community service hours required, in violation of Condition (18) of Defendant's Community Supervision order.

. . .

14). The said CHAD LESLEY LATIMER committed the offense of Possession/Use of Sub/Dev to Falsify Drug Test Results, on or about the 18th day of September, 2020, in the County of Jefferson, State of Texas, in violation of Condition (1) of Defendant's Community Supervision order.

. . .

17). The said CHAD LESLEY LATIMER failed to report to the Jefferson County Community Supervision and Corrections Department for the months December 2020 and January 2021, in violation of Condition (4) of Defendant's Community Supervision order.

Latimer pleaded "true" to each of the foregoing violations except 14, to which he pleaded "not true." Latimer further indicated he understood that the trial court could revoke his probation based on that alone, and he could be sentenced to not less than two years and not more than ten. The trial court found that Latimer pleaded true knowingly, intelligently, and voluntarily.

Latimer moved to quash the State's Allegation 14 arguing the evidence on which the allegation was based was seized without a warrant in violation of the Fourth and Fourteenth Amendments. The Motion to Quash also asserted Texas Health and Safety Code section 481.133(a) was unconstitutional. At the continuation of the hearing, the trial court heard evidence of Allegation 14, to which Latimer had

3

already pleaded "not true." The evidence included the testimony of Beaumont Police Officer Joshua Hall, who was involved in a traffic stop of Latimer where officers seized evidence found in the vehicle without a warrant. Officer Hall testified that they found liquid that looked like urine in a bottle wrapped in hand warmers. After Hall mirandized Latimer, he asked what was in the bottle, Latimer said it was urine he planned to use to "falsify a drug test."

At the conclusion of the hearing, the trial court also found Allegation 14 "true" and noted Latimer's prior pleas of true to Allegations 1, 2, 8, 9, 11, and 17. The trial court revoked Latimer's community supervision and sentenced him to four years of incarceration. The judgment noted the allegations Latimer pleaded "true" to and did not include any reference to Allegation 14.

## II. Issue One: Revocation and Warrantless Seizure of Evidence

In his first issue, Latimer complains the trial court erred by denying his motion to suppress evidence obtained without a warrant that he violated Texas Health and Safety Code section 481.133(a), which governs the falsification of drug test results. *See* Tex. Health & Safety Code Ann. § 481.133(a).

We will assume without deciding that the seizure of the evidence violated the Fourth and Fourteenth Amendments and the trial court erred in admitting such evidence to substantiate Allegation 14 in the State's Fourth Amended Motion to Revoke. We turn to the question of harm. The admission of evidence obtained in

4

violation of the Fourth and Fourteenth Amendments is constitutional error. *See Hernandez v. State*, 60 S.W.3d 106, 106 (Tex. Crim. App. 2001) (discussing Fourth Amendment); *Sears v. State*, 91 S.W.3d 451, 453, 455 (Tex. App.—Beaumont 2002, no pet.) (characterizing violation of Fourteenth Amendment as constitutional error and requiring 44.2(a) analysis). Accordingly, under Rule 44.2(a) we must reverse the conviction unless we determine beyond a reasonable doubt that the trial court's denial of suppression did not contribute to conviction or punishment. *See* Tex. R. App. P. 44.2(a). For the reasons discussed below, we conclude the error, if any, was harmless.

In a revocation proceeding, the trial court is the sole judge of the witnesses' credibility and the weight given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The State must prove the defendant violated at least one of the terms and conditions of community supervision by a preponderance of the evidence. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking community supervision. *Cardona*, 665 S.W.2d at 493–94.

One sufficient ground will support the trial court's order revoking community supervision. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009). To prevail on appeal, an appellant must successfully challenge all findings that support the revocation order. *Guerrero v. State*, 554 S.W.3d 268, 274 (Tex. App.—Houston [14th Dist.] 2018, no pet.). When the trial court finds several violations, we will affirm a revocation order if the State proved any one of them by a preponderance of the evidence. *See Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd); *see also Smith*, 286 S.W.3d at 342.

On appeal, Latimer has failed to challenge all findings that support the revocation order, instead he focuses solely on Allegation 14 in the State's Fourth Amended Motion to Revoke.[1] A plea of true standing alone is sufficient to support revocation. *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. [Panel Op.] 1979). Sufficient evidence shows that Latimer pleaded "true" to six alleged violations, excluding Allegation 14. Those violations included, among other things, extended periods of failing to report and leaving the area without notifying his

---

[1]Latimer describes the other allegations made in the State's Fourth Amended Motion to Revoke as "administrative" while characterizing the Health & Safety Code violation in Allegation 14 as the "significant issue." We disagree with this characterization. The trial court noted that any of the violations he pleaded "true" to was enough to revoke and the significance of Latimer's other violations, particularly Latimer's failure to report for extended periods and being labeled an absconder given his lengthy drug abuse history. The trial court explained, "It's these administrative violations, which including failing to report, which is where we have to keep up with you to keep somebody who has a bad habit from falling back on the bad habit."

probation officer. Latimer's pleas of "true" alone are sufficient to support the trial court's revocation order. *See id.* The trial court's constitutional error, if any, relating to evidence seized without a warrant in violation of the Fourth and Fourteenth Amendments was harmless.

We overrule Latimer's first issue.

### III. Issue Two: Constitutionality of Section 481.133(a)

In his second issue, Latimer contends Texas Health and Safety Code section 481.133(a) is facially unconstitutional, arguing it is vague and overbroad. *See* Tex. Health & Safety Code Ann. § 481.133(a). Section 481.133(a) entitled "Falsification of Drug Test Results" provides, "A person commits an offense if the person knowingly or intentionally uses or possesses with intent to use any substance or device designed to falsify a drug test result." *Id.* The statute further defines "drug test" as "a lawfully administered test designed to detect the presence of a controlled substance or marihuana." *See id.* § 481.133(c). Latimer reasons that "the only thing that makes the conduct illegal is the intent of the actor." He further contends that the "punishment of 'intent' alone results in 'thought-policing' which is surely unconstitutional" as it "is akin to stifling speech."

### A. Standard of Review and Burden of Establishing Unconstitutionality

"Whether a statute is facially unconstitutional is a question of law that we review *de novo*." *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). A "facial"

7

constitutional challenge is the most difficult to bring successfully, as the claimant asserts the complained-of law is unconstitutional "on its face," meaning it operates unconstitutionally in all potential applications. *Estes v. State*, 546 S.W.3d 691, 697–98 (Tex. Crim. App. 2018); *see also U.S. v. Salerno*, 481 U.S. 739, 745 (1987); *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). We begin with the presumption that the Legislature acted both rationally and validly in enacting the law under review. *Faust v. State*, 491 S.W.3d 733, 743–44 (Tex. Crim. App. 2015); *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The burden of proving a statute is unconstitutional is on the party challenging it. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). In construing a statute, we look to its plain language, unless the language is ambiguous or leads to absurd results the legislature could not have intended. *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008); *see also Ex parte Zavala*, 421 S.W.3d 227, 231 (Tex. App.—San Antonio 2013, pet. ref'd) (discussing principles of statutory construction in the context of a facial constitutional challenge).

Here, Latimer likens the regulation at issue to one prohibiting speech. The First Amendment limits the government's ability to regulate speech based on its substantive content. *See* U.S. CONST. amend. I; *Ex parte Flores*, 483 S.W.3d 632, 639 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Content-based regulations distinguish favored from disfavored speech based on the idea expressed. *Ex parte*

*Lo*, 424 S.W.3d at 15; *Ex parte Flores*, 483 S.W.3d at 639. The presumption of a statute's validity is reversed when reviewing content-based regulations; instead, the content-based statute is presumed invalid, and the State bears the burden to rebut the presumption. *Ex parte Lo*, 424 S.W.3d at 15; *Ex parte Flores*, 483 S.W.3d at 639.

We first determine whether the statute at issue implicates speech or conduct protected by the First Amendment since it could shift the burden of proof. *See Ex parte Sanders*, No. PD-0469-19, 2022 WL 1021055, at *6 (Tex. Crim. App. Apr. 6, 2022) (noting importance of determining if statute implicates the free-speech guarantee, because if so, appellant was relieved of his burden to show the statute was unduly vague). Although the First Amendment's protections can extend to conduct, such protections extend only to inherently expressive conduct. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). To determine "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," the question we ask is "whether 'an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it.'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. Washington*, 418 U.S. 405, 410–11 (1974)). Some examples of expressive conduct warranting such protection include burning the American flag, marching in a parade, and burning a draft card, among others. *Id.* at 406; *see also Ex parte Sanders*, 2022 WL 1021055, at *9 (listing

9

conduct the Supreme Court has recognized as expressive). When explanatory speech is necessary, it is strong evidence that the conduct is not so inherently expressive it warrants protection. *See Rumsfeld*, 547 U.S. at 66 (reasoning same).

Appellant's attempt to categorize the statute at issue as a content-based regulation by characterizing it as "thought policing" and equating the conduct to "speech" is misplaced. The complained-of statute before us prohibits individuals from using or possessing substances or devices with the intent to falsify a drug test. *See* Tex. Health & Safety Code Ann. § 481.133(a). The plain language of the statute focuses on the conduct, specifically "uses" or "possesses" coupled with the requisite intent that criminalizes the conduct. *See id.* Nothing in the statute regulates speech and using or possessing substances or devices with the intent to falsify a drug test is not inherently expressive conduct meant to convey a particularized message that another party would likely understand. *See id.*; *see also Rumsfeld*, 547 U.S. at 65–66; *Johnson*, 491 U.S. at 404; *Ex parte Sanders*, 2022 WL 1021055, at *8.

We conclude section 481.133(a) regulates noncommunicative conduct and does not implicate the First Amendment's protections. *See Ex parte Sanders*, 2022 WL 1021055, at *6 (discussing that where a statute regulates noncommunicative conduct, it does not implicate the First Amendment's free-speech guarantee). Therefore, Appellant has the burden to establish the statute's unconstitutionality. *See Rosseau*, 396 S.W.3d at 557. We now address whether Appellant met this burden.

**B. Vagueness and Overbreadth Challenges**

Latimer contends the statute is facially unconstitutional because it is overbroad and vague. He contends that

> anyone who possesses urine (which all humans do daily in some manner by care, custody, and control) and has a thought of falsifying a drug test may be prosecuted under Sec. 481.133(a). It is of no matter that the person may or may not be on probation, may or may not be required to submit to a drug test, or may or may not be conducting college lab experiments on the accuracy of drug screens. The statute is so vague and broad that it encompasses completely innocent conduct just as it may seek to punish a perceived "wrongdoer."

The statute, however, does not punish individuals who possess urine who have "mere thoughts" of falsifying a drug test. Rather, the statute seeks to punish individuals who "knowingly or intentionally" use or possess such a substance plus who have the requisite intent to use it to falsify a drug test. *See* Tex. Health and Safety Code Ann. § 481.133(a).

In *State v. Doyal*, the Court of Criminal Appeals explained that historically, the person presenting a facial challenge to a statute for vagueness had to show "that there are no possible instances of conduct that it is clear would fall within the statute's prohibitions." 589 S.W.3d 136, 144 (Tex. Crim. App. 2019). However, it called into question whether that was the correct approach considering recent United States Supreme Court opinions. *See id.* The Court of Criminal Appeals noted the Supreme Court's language in *Johnson v. United States*, "'although statements in some of our opinions could be read to suggest otherwise, our *holdings* squarely

11

contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp.'" *Id.* (quoting *Johnson v. United States*, 576 U.S. 591, 602 (2015) (emphasis in original)). The Court of Criminal Appeals explained that "[t]o pass constitutional muster, a law that imposes criminal liability must be sufficiently clear (1) to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) to establish determinate guidelines for law enforcement." *Id.* at 146 (citations omitted). The "'indeterminacy of precisely what,' the prohibited conduct is" renders a statute vague. *Id.* (quoting *U.S. v. Williams*, 553 U.S. 285, 306 (2008)). Additionally, the prohibition against vagueness in criminal statutes is fundamental to due process under the United States Constitution. *Sessions v. Dimaya*, —— U.S. ——, 138 S.Ct. 1204, 1212, 200 L.Ed.2d 549 (2018). "The void-for-vagueness doctrine ... guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Id.* (quoting *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972)).

The controlling issue in a facial overbreadth challenge is whether the statute substantially encompasses protected activity. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). "The person challenging the statute must demonstrate from its text and from actual fact 'that a substantial number of instances exist in which the Law cannot be applied constitutionally.'" *State v. Johnson*, 475

S.W.3d 860, 865 (Tex. Crim. App. 2015) (quoting *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988)). There must be a "realistic" danger the statute will be unconstitutionally applied rather than based on "'fanciful hypotheticals.'" *Id.* (citations omitted). "'Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct that is necessarily associated with speech (such as picketing or demonstrating).'" *Id.* (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003)). We have already determined this statute does not address speech or expressive conduct.

The statute neither substantially encompasses protected activity nor fails to give ordinary people "fair notice" of the conduct the statute proscribes. *See Sessions*, ⸺ U.S. ⸺, 138 S.Ct. at 1212. The statute's requirement of a culpable mental state is a factor that tends to defeat a vagueness challenge. *See United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 35–36 (1963) (discussing facial challenge for combined vagueness and overbreadth); *Screws v. United States*, 325 U.S. 91, 101 (1945) (explaining the requirement of specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid); *see also Byrum v. State*, 762 S.W.2d 685, 688 (Tex. App.—Houston [14th Dist.] 1988, no writ) (where statutes required a specific culpable mental state, it was "a factor which tends to defeat a vagueness challenge").

The requisite intent arises within the conduct of using or possessing the substance and must exist at the time of the prohibited conduct of using or possessing. *See* Tex. Health & Safety Code Ann. § 481.133(a); *see also Ex parte Zavala*, 421 S.W.3d 227, 232 (Tex. App.—San Antonio 2013, pet. ref'd) (discussing facial vagueness challenge to solicitation of minor statute and applying similar reasoning). Indeed, it is the requirement that the defendant "knowingly or intentionally uses or possesses with intent to use any substance . . . to falsify a drug test" that operates to make otherwise innocent conduct, i.e., using or possessing a substance, into criminal conduct. *See* Tex. Health & Safety Code Ann. § 481.133(a). This contradicts Appellant's claim that the statute is so vague and overbroad it "encompasses completely innocent conduct." It is not the conduct or intent standing alone, rather it is the conduct plus the requisite intent to falsify that the statute punishes and expressly delineates.

Latimer provided several hypotheticals involving individuals not required to submit to testing or conducting lab experiments, but his concerns regarding those hypotheticals are resolved by the statutory definition of "drug test" as being limited to a "lawfully administered test designed to detect the presence of a controlled substance or marihuana." *See id.* § 481.133(a). Considering the limit the definitions in the statute place on the statute's reach, Latimer's hypotheticals do not present a

14

"realistic" danger that the statute will be unconstitutionally applied. *See Johnson*, 475 S.W.3d at 865.

We conclude Appellant has failed to carry his burden to establish the statute is so vague or overbroad as to make it facially unconstitutional.

We overrule issue two.

## Conclusion

We hold that the trial court's error, if any, in admitting evidence of the warrantless search was harmless since Latimer pleaded "true" to multiple other violations of the terms of his community supervision, which was sufficient to support the revocation order. We further hold that Texas Health and Safety Code section 481.133(a) does not implicate the First Amendment, and Appellant failed to meet his burden of establishing it was facially unconstitutional for vagueness or overbreadth. Having overruled Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on July 8, 2022
Opinion Delivered July 13, 2022
Publish

Before Golemon, C.J., Horton and Johnson, JJ.